IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| EARL JEROME LEE, JR. | ) | |
| | ) | |
| v. | ) | NO: 3:15-0007 |
| | ) | |
| WILSON COUNTY JAIL - LEBANON, et al. | ) | |

TO: Honorable Waverly J. Crenshaw, Jr., District Judge

### R E P O R T  A N D  R E C O M E N D A T I O N

By Order entered March 12, 2015 (Docket Entry No. 5), this civil action was referred to the Magistrate Judge, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Presently pending before the Court are the motion for summary judgment of Defendants Robert Bryan, Doug Whitefield, James Garton, and Terry Hensley (Docket Entry No. 33) and the motion for summary judgment of Defendant Karmen Dickson (Docket Entry No. 36). Plaintiff has responded in opposition to the motion, *see* Docket Entry Nos. 48-50 and 67, as well as filed his own motion for summary judgment (Docket Entry No. 43). Set out below is the Court's recommendation for disposition of the motions and this action.

# I. BACKGROUND

Earl Jerome Lee, Jr., ("Plaintiff") is an inmate within the custody of the Tennessee Department of Correction ("TDOC") currently confined at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee. On January 5, 2015, he filed this action *pro se* and *in forma pauperis* seeking over $5,000,000.00 in damages under 42 U.S.C. § 1983 based upon allegations that his constitutional rights were violated when he was previously held as an inmate in the Wilson County Jail ("Jail") in Lebanon, Tennessee. *See* Complaint (Docket Entry No. 1).

Specifically, Plaintiff asserts that, on or about September 1, 2014, he was made to move from the bottom bunk in his cell by Jail correctional officer Terry Hensley ("Hensley") so that the bunk could be assigned to a new inmate who had entered the Jail. *Id*. at 11. Plaintiff alleges that he was moved even though he had a medical order in his TDOC medical file for a bottom floor/bottom bunk assignment. *Id*. at 7. He also alleges that Hensley and Jail nurse Karmen Dickson ("Dickson") manufactured paperwork showing that the other inmate had a medical need for the bottom bunk. *Id*. at 11. Plaintiff contends that he was removed from the bottom bunk because of racial discrimination, he is African-American and the new inmate is white, and because of favoritism because the inmate is a relative of an employee of the Wilson County Sheriff's Department. Plaintiff assert that he was then moved by Hensley into a "lock down unit" for seven days before he was returned to his prior cell and given the bottom bunk again. Plaintiff contends that his initial grievance at the Jail about the matter was destroyed or ignored, that Hensley used racial epithets toward him when he requested grievance forms, and that he did not receive a response to his subsequent grievance until November 14, 2014, when he was being transferred from the Jail to a TDOC facility. *Id*. at 7-8 and 11-12. Plaintiff alleges that Wilson County Sheriff Robert Bryan ("Bryan"), Wilson County

Sheriff's Department Lt. Doug Whitefield ("Whitefield"), and Jail correctional officer Garton either failed to protect him from the alleged wrongful acts or engaged in a "cover-up" by destroying or improperly processing his grievances. *Id*. at 10-11.

Upon initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court found that Plaintiff alleged: 1) a colorable constitutional claim under the First Amendment against Hensley in his individual capacity based on the allegation that Hensley retaliated against Plaintiff because of his grievances by moving him to another cell in the "lock down unit;" and 2) a colorable constitutional claim under the Fourteenth Amendment's Equal Protection clause against Hensley, Bryan, Whitefield, Garton, and Dickson in their individual capacities based on the allegation that Plaintiff was moved from the bottom bunk because of racial discrimination. *See* Docket Entry No. 5 at 2. The Court dismissed Plaintiff's claim concerning the processing of his grievances and his claims against the Wilson County Jail, Southern Health Partners, and Nurse Lilly, who were also named as defendants in the Complaint. *Id*. A scheduling order and amended scheduling order were subsequently entered providing for a period of pretrial activity in the action. *See* Docket Entry Nos. 14 and 30. The parties demand a jury trial.

## II. MOTIONS FOR SUMMARY JUDGMENT

Defendants Bryan, Whitefield, Garton, and Hensley (hereinafter referred to collectively as "the Wilson County Defendants") contend that they are entitled to summary judgment as a matter of law because Plaintiff cannot set forth evidence supporting his constitutional claims. They also raise qualified immunity as a defense to Plaintiff's Equal Protection claim. The Wilson County Defendants acknowledge that, on August 30, 2014, an inmate was moved into Plaintiff's cell in the

"J pod" and assigned to the bottom bunk, that Plaintiff was moved into a cell in the "L pod" where he was given a bottom bunk, and that, on September 6, 2014, Plaintiff was reassigned back to the bottom bunk in his prior cell. Relying on the affidavit of Defendant Whitefield (Docket Entry No. 34) and Jail documents attached thereto (Docket Entry Nos. 34-1 and 34-2), the Wilson County Defendants contend that: 1) a documented medical need existed for the new inmate to have a bottom bunk; 2) Plaintiff did not have a documented medical need for a bottom bunk and had been cleared for either a top or bottom bunk by the medical staff at the Jail; 3) Plaintiff refused to accept the top bunk in his original cell; and, 4) Plaintiff was moved to the L pod, which had a bottom bunk, because of his refusal to accept the top bunk in the original cell. The Wilson County Defendants deny that a racial or retaliatory animus played any role in the decisions to assign the new inmate to the bottom bunk in Plaintiff's original cell or to move Plaintiff to a different cell, which they contend were matters of Jail administration supported by valid penalogical and safety concerns.

Defendant Dickson argues that she is entitled to summary judgment in her favor because the undisputed evidence fails to support a claim that she violated Plaintiff's constitutional rights in any manner. She contends that she provided appropriate care for Plaintiff's medical needs at the Jail and that there is no evidence of deliberate indifference on her part to any serious medical need of Plaintiff to have a bottom bunk assignment while at the Jail. She further contends that, as a medical staff member, she had no role in deciding Plaintiff's bunk or cell assignment at the Jail. She denies taking any action or failing to take any action because of Plaintiff's race. In support of her motion, Defendant Dickson relies upon her own affidavit and Plaintiff's medical records attached thereto (Docket Entry No. 37-1).

Plaintiff disputes that either the Wilson County Defendants or Defendant Dickson are entitled to summary judgment and contends that genuine issues of material fact exist. Alternatively, he requests summary judgment in his favor. Plaintiff contends that the documentary evidence submitted by Defendants has been altered and falsified, that Defendant Hensley does not dispute using racial epithets toward Plaintiff, that Defendant Whitefield has assumed responsibility for the action of others at the Jail, and that the Defendants have conspired against him. *See* Docket Entry Nos. 43, 48, and 67. Plaintiff further argues that he was denied medical treatment and not treated properly with respect to his medical needs while at the Jail. *See* Docket Entry Nos. 48, 50, and 67. Plaintiff supports his response and his motion with his own affidavit (Docket Entry No. 49).

### III. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Unlike ruling on a motion to dismiss, in considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from

underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.), *cert. denied*, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, at 249-50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

## IV. ANALYSIS

Initially, the Court notes that the factual issues involved in this case are narrow, and there are only two specific legal claims before the Court; 1) a First Amendment retaliation claim against Defendant Hensley based upon Plaintiff's move from a cell in the J-pod to a cell in the L-pod; and 2) a Fourteenth Amendment Equal Protection claim against all Defendants based upon Plaintiff's bottom bunk being reassigned to another inmate. Thus, Defendant Dickson's argument that she did not violate Plaintiff's Eighth Amendment right to constitutionally adequate medical care, *see Memorandum in Support* (Docket Entry No. 37) at 4-7, is not germane to the issues at hand.

Similarly, Plaintiff's assertions that he was denied constitutionally adequate medical care, that he was denied access to adequate legal materials, and that he was transferred from the Jail or retaliated in other ways, *see* Docket Entry No. 43 at 2, Docket Entry No. 49 at 2-3, and Docket Entry No. 67 at 2-5, are not relevant to the claims at issue.

Additionally, Plaintiff continues to seek default judgment and other remedies in this action because of alleged procedural shortcomings by Defendants, particularly Defendant Dickson's untimeliness in associating local counsel. *See* Docket Entry Nos. 48, 66, and 67. These issues have been previously addressed by the Court, *see* Docket Entry Nos. 17, 55, and 57, and the Court has made clear that he will not be granted default judgment in this action. Plaintiff's complaints about these matters do not entitle him to any substantive relief or impact the summary judgment issues before the Court.

The Court now turns to Plaintiff's two claims. Although Plaintiff's allegations were sufficient to permit the claims to survive initial review under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the evidence before the Court at this stage of the proceedings is not sufficient to support the claims and to require that the claims be heard at trial.

With respect to Plaintiff's retaliation claim, a prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Among these rights is the right to pursue grievances against prison officials. *Pell*, 417 U.S. at 822; *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Thus, a prisoner cannot be retaliated against because he has filed grievances. *See Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005); *Smith v. Campbell*, 250 F.3d 1032, 1036-37 (6th Cir. 2001). In order to determine whether the allegations

of retaliation rise to the level of a First Amendment claim, Plaintiff must show that: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a prisoner of "ordinary firmness" from continuing to engage in the protected conduct; and 3) there is a causal connection between the first two elements -- that is, the adverse action was motivated at least in part by Plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff has the burden of proof on all three elements. *Murray v. Unknown Evert*, 84 Fed.App'x. 553, 556, 2003 WL 22976618 (6th Cir. Dec. 8, 2003).

Even when the evidence before the Court is viewed in the light most favorable to Plaintiff, he fails to set forth evidence from which any reasonable jury could find that he suffered a sufficiently serious adverse action. Because of the unique context of the prison setting, some events that are objectionable to the complaining prisoner simply do not rise to a level of harm necessary to implicate constitutional concern. *See Thaddeus-X,* 175 F.3d at 395 and 398. While an act need not be egregious in order to be adverse, prisoner inmates "may be required to tolerate more than a average citizen." *Id*. at 398. In order to satisfy the adverse action requirement, a prison inmate must show more than *de minimis* harm, *id.* at 396, and "routine inconveniences of prison life [ ] do not constitute adverse action." *Reynolds-Bey v. Harris*, 428 Fed.App'x. 493, 503 (6th Cir. 2011). The alleged adverse action at issue was Plaintiff being moved by Defendant Hensley from a cell in J-pod to a cell in L-pod, where he stayed for less than a week.[1] Being moved between cells is something that is an act inherent to incarceration and one that falls squarely within the scope of *de minimis* actions that do not support a retaliation claim. There is no evidence in the record supporting a

---

[1] Although the Court's Memorandum on initial review referred to Plaintiff receiving "false disciplinary write-ups," *see* Docket Entry No. 4 at 2, there is no evidence showing that Plaintiff received any disciplinary write-ups incident to the events at issue.

conclusion that the cell change was anything other than a routine and unremarkable event, the type of which that has no deterrent effect for the purposes of a retaliation claim.

Additionally, the evidence, even when viewed in the light most favorable to Plaintiff, does not support the causation element of his retaliation claim. To avoid summary judgment on the causation element, Plaintiff must present evidence from which a reasonable jury could conclude that his protected conduct was a motivating factor behind the adverse action and that the same action would not have occurred in the absence of the protected activity. *See Thaddeus-X*, 175 F.3d at 399. Plaintiff has not met this burden. Plaintiff's movement to another cell occurred contemporaneously to the events surrounding the Plaintiff's loss of the bottom bunk in the J-pod cell and prior to the Plaintiff's filing of a grievance about the matter. Accordingly, there is no evidence that could reasonably be viewed as showing that Defendant Hensley moved Plaintiff to another cell because Plaintiff filed a grievance.

With respect to Plaintiff's Equal Protection claim, the claim is based upon his disagreement with a single incident related to his bunk and cell assignment within the Jail.[2] However, the manner of an inmate's confinement while in prison and the decisions of prison officials regarding internal issues of inmate control and housing are generally matters left to the sound discretion of prison officials. *See Sandin v. Conner*, 515 U.S. 472, 477-78, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Thornburgh v. Abbott*, 490 U.S. 401, 404-08, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *O'Lone v.*

---

[2] Plaintiff has not set forth any evidence showing that overt racial classifications were used at the Jail or that any official policy or custom at the Jail includes racial classifications. Therefore, his claims differ significantly from claims in which racial categories or classifications were explicitly used by prison officials in making inmate management decisions. *See Johnson v. California*, 543 U.S. 499, 125 S. Ct. 1141, 160 L. Ed. 2d 949 (2005); *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008).

*Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Bell v. Wolfish*, 441 U.S. 520, 546-47, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995). As such, what bunk and what cell Plaintiff was assigned while at the Jail are decisions to be made by those operating the Jail.

Nonetheless, the Equal Protection Clause provides a certain measure of limitation on this discretion by prohibiting conduct that discriminates on the basis of membership in a suspect class, such as race. *See Washington v. Davis*, 426 U.S. 229, 239, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). An Equal Protection claim must, however, be supported by actual evidence showing that the challenged action was motivated by purposeful discrimination related to a protected class. *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265-66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990); *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir. 1986).

In the instant case, the only actual evidence supporting Plaintiff's claim consists of: 1) the fact that Plaintiff is African-American and the inmate who was given his bottom bunk is white; and 2) Defendant Hensley's use of a racial epithet toward Plaintiff when Plaintiff requested grievances about the matter, an act by Defendant Hensley which the Court, for the purpose of determining the parties' summary judgment motions, assumes to have occurred as alleged by Plaintiff. Plaintiff also seeks to discredit Defendants' explanation for the bunk change by arguing that documentary evidence has been altered or falsified, that Defendants have conspired against him, and that

Defendants could have taken other steps than those that were taken to address the bunk needs of Plaintiff and the other inmate.

While Defendant Hensley's use of a racial epithet is unprofessional and deplorable, it is alleged as an isolated occurrence and was, by Plaintiff's own allegations, directed toward Plaintiff's request for grievances and not related to the issue of the bottom bunk. Even given the most generous inference and viewed in the light most favorable to Plaintiff, this evidence of racial animus is minimal and simply too tenuous to rise above a scintilla of evidence in his favor. To defeat summary judgment, more than a scintilla of evidence is required. *Bell*, *supra*. At best, Plaintiff has only alleged an isolated and minor incident of differing treatment among prison inmates, which is insufficient to support a claim of unlawful discrimination. *See Tate v. Davis*, 2013 WL 53761, **2-3 (W.D. Mich. Jan. 3, 2013) (prisoner's conclusory allegations that discriminatory animus was behind his loss of a prison job did not support an equal protection claim); *Barnes v. Outlaw*, 2006 WL 840418, *6 (W.D.Tenn. Mar. 30, 2006) ("The mere fact that on some occasions a heterosexual or non-black inmate received favorable treatment does not elevate plaintiff's claim into a matter of constitutional concern."); *Fletcher v. Chartrand*, 1989 WL 14015, *1 (6th Cir. Feb. 22, 1989) (allegations that prison guard selectively enforced disciplinary regulation on racial grounds was insufficient to state a claim for relief).

In the absence of evidence of discrimination based upon a suspect classification, the challenged disparate treatment need only be supported by a rational basis. *Scarbrough*, 470 F.3d at 261; *Rawls v. Sundquist*, 929 F. Supp. 284, 291 (M.D. Tenn. 1996). Defendants have provided a rational explanation for why the bunk and cell change were made. Although Plaintiff obviously disagrees with this explanation and offers alternatives that he believes could have been pursued by

Jail staff, a prison inmate has no constitutional right to be given an explanation by prison officials for routine management decisions, let alone an explanation that the inmate finds satisfactory. *See Rodgers v. Johnson*, 56 Fed.App'x 633, 636 (6th Cir. 2002). The Court finds Plaintiff's assertions of falsified documents and a conspiracy against him to be conclusory, self-serving, and unsupported by the evidence. Such assertions are insufficient to defeat a summary judgment motion. *See Jackson v. Madery*, 158 Fed.App'x 656, 659 (6th Cir. Nov, 17, 2005); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

In the end, the Court finds that there is nothing set forth by Plaintiff that warrants a trial concerning the isolated and minor events upon which he brought this lawsuit. No reasonable jury could find that Plaintiff's constitutional rights were violated. Accordingly, summary judgment should be granted to Defendants.

The Court's finding that there is no evidence that a constitutional violation occurred is sufficient to warrant dismissal of Plaintiff's claims without full analysis of the qualified immunity defense raised by the Wilson County Defendants. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009).

## RECOMMENDATION

Based on the forgoing, the Court respectfully RECOMMENDS that:

1) the motions for summary judgment of Defendants Robert Bryan, Doug Whitefield, James Garton, and Terry Hensley (Docket Entry No. 33) and Defendant Karmen Dickson (Docket Entry No. 36) be GRANTED;

2) the Plaintiff's motion for summary judgment (Docket Entry No. 43) and motion to rebut (Docket Entry No. 48) be DENIED; and

3) this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge